**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARLOTTE B. JOHNSON,**<br>**Plaintiff,** | : | **CIVIL ACTION** |
| **v.** | : | **NO. 06-4316** |
| **R. JAMES NICHOLSON,**<br>**SECRETARY, U.S. DEPARTMENT**<br>**OF VETERANS AFFAIRS,**<br>**Defendant.** | : | |

| | | |
|---|---|---|
| **CHARLOTTE B. JOHNSON,**<br>**Plaintiff,** | : | **CIVIL ACTION** |
| **v.** | : | **NO. 07-4741** |
| **R. JAMES NICHOLSON,**<br>**SECRETARY, U.S. DEPARTMENT**<br>**OF VETERANS AFFAIRS,**<br>**Defendant.** | : | |

## MEMORANDUM AND ORDER

**Tucker, J.** **September ___, 2008**

Presently before this Court is Defendant's Motion for Summary Judgment (Doc. 15). For the reasons set forth below, upon consideration of Defendant's Motion, Plaintiff's Response (Doc. 17), and Defendant's Reply (Doc. 22), this Court will grant Defendant's Motion.___

## BACKGROUND

Plaintiff, Charlotte B. Johnson, brings this action against her former employer, the Secretary of Veteran Affairs, alleging retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to e-17 ("Title VII"). Plaintiff was employed by the Department of Veteran Affairs ("DVA") at the Coatesville Veteran Affairs' Medical Center ("Medical Center") as a nurse educator/consultant from November 3, 1991 until the date of her resignation, July 9,

2005. Plaintiff's job responsibilities included providing instruction to newly hired nurses as part of their orientation to the Medical Center. In August 2004, a newly hired black nurse complained to the Medical Center's Equal Employment Opportunity ("EEO") Manager that Plaintiff discriminated against her on the basis of her race and made derogatory comments about the Medical Center and its management officials. The EEO Manager notified Gary Devanksy, Director of the Medical Center, who ordered the Medical Center's Administrative Board of Investigation ("Board") to investigate the allegations. As a result of the Board's findings, Plaintiff was reassigned to a staff nurse position, effective November 3, 2004, with no loss of pay. Plaintiff did not appear for the staff nurse position, instead, she took medical leave for eight (8) months and then voluntarily resigned on July 9, 2005.

While on leave, Plaintiff, a white female, filed a formal complaint with the DVA alleging that her reassignment from nurse educator to staff nurse was discriminatory on the basis of her race and gender. The DVA concluded that Plaintiff failed to establish that the Medical Center discriminated her on the basis of her race and gender. On September 27, 2006, Plaintiff filed suit alleging gender and race discrimination in violation of Title VII (Civil Action No. 06-4316).

On July 11, 2005, two days after tendering her resignation, Plaintiff began working at the Brandywine School of Nursing ("Brandywine") as a nursing instructor. In October 2005, Brandywine and the Medical Center entered into an agreement which provided in part, that Brandywine, through its staff, would provide clinical training and experience to its students at the Medical Center's facilities. Plaintiff's job responsibilities at Brandywine included providing instruction and supervision to Brandywine nursing students at the Medical Center.

On December 5, 2005, Rosemary Wharton, the Medical Center's Associate Director for Patient Care Services, learned that Plaintiff was scheduled to teach Brandywine students at the Medical Center. Ms. Wharton informed the Medical Center's senior management of Plaintiff's anticipated return. Senior management, in turn, decided that Plaintiff would not be permitted to function as a student nurse instructor in any of the Medical Center's programs. On or around December 14, 2005, Sharon Wolf, Brandywine's Director, arranged for an instructor, not Plaintiff, to accompany the Brandywine students to the Medical Center's campus.

On January 3, 2006, Nina Yentzer, a Nurse Educator/Affiliations Coordinator at the Medical Center, contacted Plaintiff by telephone to inform her that the management officials would not permit Plaintiff to act as an instructor for the Brandywine students at the Medical Center. Subsequently, Plaintiff informed her attorney that she had "heard rumors" that she would not be able to teach students at the Medical Center. Plaintiff's counsel then wrote three letters to Mr. Devansky, the Medical Center's Director, dated January 8, 2006, January 23, 2006, and February 7, 2006, respectively. Each letter asked Mr. Devansky to confirm or deny any decision made by the Medical Center to deny Plaintiff permission to teach Brandywine students on its facilities. On February 15, 2006, Jose Lopez, the Medical Center's Regional Counsel, responded to the inquiries of Plaintiff's counsel by confirming that Plaintiff did not have the authority to re-enter the Medical Center in an instructor capacity.

On February 27, 2006, Plaintiff contacted an EEO Counselor alleging that the Medical Center discriminated against her in reprisal for her prior lawsuit by interfering with her employment relationship with Brandywine. On March 27, 2006, Administrative Judge Susan Flynn found that Plaintiff's retaliation claim was untimely because it failed to comply with the

applicable forty-five (45) day limitations period, and therefore dismissed the claim. On November 9, 2007, Plaintiff filed suit alleging retaliation in violation of Title VII (Civil Action No. 07-4714). By Order dated November 28, 2007, this Court consolidated Plaintiff's retaliation claim with her already existing race and gender discrimination claims under docket no. 06-4316.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis of its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence

of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[I]f the opponent [of summary judgment] has exceeded the 'mere scintilla' [of evidence] threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against opponent, even if the quality of the movant's evidence far outweighs that of its opponent." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

**DISCUSSION**

Plaintiff brings her claims pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to e-17. Defendant moves for summary judgment on two grounds. First, Defendant argues that Plaintiff did not timely exhaust her administrative remedies before filing her retaliation complaint. Second, Defendant argues that equitable tolling should not apply. The Court will address each argument in turn.

**1. Failure to Exhaust Administrative Remedies**

Defendant argues that the Court should grant summary judgment because Plaintiff failed to contact an EEO Counselor within forty-five days of the alleged retaliatory action as required by 29 C.F.R. § 1614.105(a)(1). Essentially, Defendant argues that Plaintiff failed to initiate contact with an EEO Counselor until February 27, 2006, more than forty-five days after Plaintiff knew, or should have known about the alleged retaliation and, thus, did not exhaust her administrative remedies. Plaintiff counters that she did not know, and reasonably should not have known, of the retaliatory action taken against her until February 15, 2006, bringing her

within the regulations forty-five day time limit. In the alternative, Plaintiff argues that she was actively misled and prevented by Defendant from timely seeking counseling.

In order to maintain a Title VII lawsuit, a plaintiff must establish that she has exhausted her administrative remedies prior to filing suit. Robinson v. Dalton, 107 F.3d 1018, 1020 (3d Cir. 1997). Among other requirements, EEO regulations require that federal employees who intend to file a charge of discrimination contact an EEO counselor within forty-five days of the date of the matter alleged to be discriminatory. 29 C.F.R. § 1614.105(a)(1).
This forty-five day time period begins to run "when the plaintiff knows or reasonably should know that the discriminatory act has occurred." Oshiver v. Levin, Fishbein, Sedran, & Berman, 38 F.3d 1380, 1386 (3d Cir. 1994). Initiating counseling under the regulations is an essential requirement for a plaintiff to properly exhaust administrative remedies. Robinson, 107 F.3d at 1021 ("[e]xhaustion requires both consultation with an agency counselor and the filing of a . . . complaint within the required times."). The regulations, however, provide that the 45-day limit may be extended under certain circumstances:

> The agency or the Commission shall extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

29 C.F.R 1614.105(a)(1) (emphasis added).

In this case, there are no circumstances present that would warrant an extension of the forty-five day time limit. First, Plaintiff knew of the allegedly retaliatory action taken by Defendant well before the expiration of the applicable time limit. Specifically, on Tuesday January 3, 2006, Nina Yentzer, Defendant's nurse educator/affiliations coordinator, had a telephone conversation with Plaintiff. Yentzer Aff. ¶ 6. During the course of this conversation, Ms. Yentzer advised Plaintiff that the Medical Center's management officials had made a final decision that she would not be permitted to act as an instructor for the Brandywine students at Defendant's facilities. Id.. Plaintiff contends that such oral communications do not constitute sufficient notice of retaliatory action. Plaintiff's contention, however, is unavailing as Defendant's oral notification of its decision to not permit Plaintiff on their facilities in an instructional capacity was sufficient. Oshiver, 38 F.3d at (finding that plaintiff "discovered" her injury the date her employers verbally informed her of her discharge). Thus, having known of the Defendant's decision from her conversation with Ms. Yentzer, Plaintiff had until February 17, 2006, forty-five days from January 3, 2006, to seek counseling with an EEO Counselor. Therefore, Plaintiff's efforts to contact an EEO Counselor on February 27, 2006, were untimely.

Second, even if, as Plaintiff claims, she had no direct knowledge of Defendant's decision to not let her instruct in any capacity on their campus as of January 3, 2006, there was sufficient contemporaneous and prior circumstantial evidence available to Plaintiff of Defendant's decision. Therefore, Plaintiff reasonably should have known that allegedly discriminatory or retaliatory action had taken place. In fact, Plaintiff admits that on or before January 8, 2006, she had "heard rumors" of Defendant's decision and informed her attorney of such. Pl.'s Declaration ¶ 6. Indeed, as early as December 14, 2005, Ms. Yentzer had informed Sharon Wolf,

Brandywine's Director and Plaintiff's new boss, of Defendant's decision to not allow Plaintiff to function as a student nurse instructor for any of Defendant's programs. Wharton Aff. ¶ 4, Yentzer Aff. ¶ 5. Tellingly, after this communication, Ms. Wolf arranged for a different instructor to instruct the Brandywine students at Defendant's facilities. Yentzer Aff. ¶ 5.

Furthermore, prior to arranging for another instructor to accompany the Brandywine students, Ms. Wolf wrote a letter to Defendant's Director of Education, Patrick Appignani, on January 4, 2006, inquiring about Defendant's previously expressed decision to not permit Plaintiff on site to instruct students. Letter from Sharon Wolf, Director, Brandywine School of Nursing, to Patrick Appignani, Director of Education, Coatesville Veterans Affairs Medical Center (Jan. 4, 2006). The following day, Mr. Appignani, responded that Defendant was unwilling to discuss its reasons for denying Plaintiff permission to be on its campus without a written release from Plaintiff. Letter from Patrick Appignani, Director of Education, Coatesville Veterans Affairs Medical Center, to Sharon Wolf, Director, Brandywine School of Nursing (Jan. 5, 2006).

In addition, the three letters sent by Plaintiff's attorney on January 8, 2006, January 23, 2006 and February 7, 2006, each provide further evidence that Plaintiff was fully cognizant of any allegedly retaliatory action being taken against her. Indeed, each letter requested that Defendant "confirm or deny" its previous decision to not allow Plaintiff on the premises in an instructional capacity. Letter from Dennis Friedman, Attorney, Charlotte Johnson, to Gary Devansky, Director, Coatesville Veterans Affairs Medical Center (Jan. 8, 2006), Letter from Dennis Friedman, Attorney, Charlotte Johnson, to Charleen Szabo, Network Director, Veterans Affairs Stars & Stripes Healthcare Network (Jan. 23, 2006), Letter from Dennis Friedman,

Attorney, Charlotte Johnson, to Charleen Szabo, Network Director, Veterans Affairs Stars & Stripes Healthcare Network (Feb. 7, 2006). On February 15, 2006, two days prior to the expiration of Plaintiff's forty-five day time period, Defendant's Regional Counsel, Jose Lopez, provided written confirmation to Plaintiff's attorney reiterating Defendant's decision to not permit Plaintiff on the premises in an instructional capacity. Letter from Jose Lopez, Regional Counsel, Veterans Affairs Medical Center, to Dennis Friedman, Attorney, Charlotte Johnson (Feb. 15, 2006).

Thus, with written confirmation in hand, Plaintiff still had an opportunity to seek counseling prior to the expiration of the applicable forty-five day deadline. This is true whether the time limit is calculated from the date when Plaintiff knew directly of Defendant's decision, January 3, 2006, or whether the time frame is calculated from the latest date when Plaintiff should have known of Defendant's decision, January 8, 2006. Therefore, under either scenario, Plaintiff's efforts to seek counseling on February 27, 2006, was untimely. Zdiech v. DaimlerChrysler Corp., 114 Fed.Appx. 469, 471 (3d Cir. 2003) (reasoning that alleged discrimination occurred when plaintiff was denied accommodation and did not become revived by plaintiff's repeated subsequent requests for reconsideration of a decision that had already been made); Palochak v. County of Beaver, PA, No. 04-421, 2006 WL 544290, *4 (W.D. Pa. Mar. 6, 2006) (concluding that defendant-employer's repeated denials of plaintiff-employee's request to be reinstated did not amount to separate unlawful employment practices so as to start a new limitations period).

2. **Equitable Tolling**

Equitable Tolling is appropriate in Title VII cases where "the defendant has actively misled the plaintiff; when the plaintiff 'in some extraordinary way' was prevented from asserting her rights; or when the plaintiff timely asserted her rights in the wrong forum." Seitzinger v. Reading Hosp. and Med. Ctr., 165 F.3d 236, 240 (3d Cir. 1999) (internal citations omitted). District courts are to apply equitable tolling sparingly. Id. at 237. The plaintiff bears the burden of proving that equitable tolling applies. Podobnik v. U.S. Postal Serv., 409 F.3d 584, 591 (3d Cir. 2005).

Plaintiff argues that her case presents one of the rare circumstances when equitable tolling should apply because Defendant did not respond to the letters her attorney sent on January 8, 2006, January 23, 2006 and February 7, 2006 until February 15, 2006. Essentially, Plaintiff contends that the six week time period that elapsed between the January 8, 2006 letter from her attorney and Defendant's February 15, 2006 response actively misled and prevented her from asserting her rights in some extraordinary way. As the discussion above evidences, however, Plaintiff can make no such showing that she was either actively misled by Defendant to believe that she would be permitted on Defendant's campus in an instructional capacity, or that there are any extraordinary circumstances present that would warrant equitable tolling.

Specifically, after Plaintiff voluntarily resigned from employ with Defendant on July 9, 2005, at *no time* did Defendant make any indication, either orally or in writing, to Plaintiff or anyone else that Plaintiff would be permitted to act in an instructional capacity on Defendant's campus. Indeed, every communication from Defendant to Plaintiff, either directly or indirectly,

stated otherwise. Thus, Defendant took no action that actively misled Plaintiff in this regard. Similarly, Defendant had already indicated its position that Plaintiff would not be allowed on its campus in an instructional capacity as early as December 14, 2005, and, as evidenced by the letters from Plaintiff's attorney, no later than January 8, 2006. Plaintiff's desire for Defendant to clarify, explain or reconsider its prior stated position via a formal written response to her attorney's letters within a certain, unspecified time frame is insufficient to qualify as an extraordinary circumstance warranting equitable tolling. Thus, because Plaintiff has provided insufficient evidence to prove that the filing period should be equitably tolled, her claim is time-barred.

## CONCLUSION

For the foregoing reasons, this Court will grant Defendant's Motion for Summary Judgment. An appropriate Order follows.